# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YVONNE TAYLOR, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 09-377 |
| ) | |
| v. ) | Magistrate Judge Bissoon |
| ) | |
| PITTSBURGH MERCY HEALTH ) | |
| SYSTEM, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiffs' Motion for Court-facilitated notice to putative collective action members (Doc. 3) will be granted as described below.

The allegations and evidence submitted in connection with Plaintiffs' Motion are well known to the parties, and will not be repeated here. Also familiar to counsel are the decisions in Camesi v. University of Pittsburgh Medical Center, Civil Action No. 09-85J (W.D. Pa.) (Bissoon, M.J., presiding) and Kuznyetsov v. West Penn Allegheny Health Sys., Inc., Civil Action No. 09-379 (W.D. Pa.) (Ambrose, C.J.).

This Court will follow Chief Judge Ambrose's well-reasoned decision in Kuznyetsov, which held, among other things, as follows:

- At stage one of the conditional certification determination, Plaintiffs are required "to show a factual nexus between their situation and the situation of other current and former [employees] sufficient to determine that they are 'similarly situated.'" *See* Doc. 81 in Civil Action No. 09-379 at 3-4 (hereinafter the "June 1st Order in Kuznyetsov") (citations and some internal quotations omitted). In other words, Plaintiffs must provide "a sufficient factual basis on which a reasonable inference could be made" that the putative collective action members are similarly situated. *Id.* at 4.

EXHIBIT A

- The statements in Plaintiffs' affirmations regarding "other employees," which are materially similar to those in Kuznyetsov, are inadmissible hearsay, and they will not be considered for the purposes of conditional certification. *See id.* at 6.

- Like the opt-in consent forms presented in Kuznyetsov, the ones filed here are sufficiently vague and ambiguous that they lack probative value on the issue of similar situation. *See id.* Thus, the opt-in forms in this case will not be afforded evidentiary weight. *See id.*

- Like the affiants in Kuznyetsov, the affiants here do not claim that they were required or permitted to work during meal periods exclusively as a result of patient care needs. *Compare id.* to, *e.g.*, Doc. 5-7 at ¶¶ 9, 16 (affiant was not "relieved by another employee" during her break, and employer's short-staffing required her to perform more work than could be accomplished if she took her meal break) *and* Doc. 5-8 at ¶¶ 9, 16 (stating same).

With these preliminary matters established, the Court now turns to the substance of Plaintiffs' Motion for conditional certification.

Plaintiffs have submitted the affirmations of eight former employees of the Mercy Hospital of Pittsburgh ("Mercy Hospital"), swearing that, during their employment, a computerized, automated meal break deduction of 30 minutes was applied to their pay records each workday. *See, e.g.*, Doc. 5-8 at ¶¶ 4, 5.[1] The affiants also allege that Mercy Hospital was aware of, permitted and/or demanded that they work through meal breaks without compensation. *See, e.g., id.*, at ¶¶ 24, 25. Under the circumstances, the automatic meal deduction policy alleged in this case is materially similar to those in Camesi and Kuznyetsov. *See, e.g.*, June 1st Order in

---

[1] In both their affirmations and the Complaint, Plaintiffs' meal break claims are based on representations of fact that Plaintiffs were subjected to computerized, automated payroll deductions. *See, e.g.,* Compl. (Doc. 1) at ¶ 74; Doc. 5-8 at ¶¶ 3-4. There is no reason to believe that Plaintiffs will allege liability based on non-computerized/automated deductions. *Cf. generally* In re Salomon Analyst Winstar Litig., 2006 WL 510526, *6 (S.D.N.Y. Feb. 28, 2006) ("plaintiffs can[not] first assert one set of facts, and . . ., when unsuccessful, amend the complaint to assert contrary facts") (citation omitted).

2

Kuznyetsov at 7-9 (application of automatic deduction policy potentially violated employer's duty "to ensure that [its] employees [we]re receiving the[ir] full meal break").

That Mercy Hospital's purported policy appears to have gone unwritten, unlike the ones in Camesi and Kuznyetsov, is not dispositive. *See, e.g.*, Crawford v. Lexington-Fayette Urban County Gov't, 2008 WL 2885230, *7 n.6 (E.D. Ky. Jul. 22, 2008) (plaintiffs demonstrated similarly situation because they engaged in work activity during their meal breaks, and FLSA violation could be established through unwritten policy instructing that such work must be performed) (citation omitted); Musarra v. Digital Dish, Inc., 2008 WL 818692, *4-5 (S.D. Ohio Mar. 24, 2008) (granting conditional FLSA certification based on plaintiffs' allegations of employer's unwritten policy). Mercy Hospital does not expressly deny that such a policy existed,[2] and, even if Defendants did, this would not provide a basis for refusing certification. *See* Order in Camesi dated May 15, 2009 at 6 ("[a] plaintiff's burden at [the] preliminary stage is minimal," and "the court does not weigh the merits, resolve factual disputes, or make credibility determinations") (citation to quoted source omitted).

In sum, Plaintiffs have presented sufficient evidence to create a "reasonable inference" that workers at Mercy Hospital were similarly situated. *See* discussions *supra*. The same cannot be said of the other locations referenced in the Complaint.[3]

---

[2] Rather, Defendants seem determined to change the subject. *See, e.g.*, Doc. 52-3 at ¶ 3 (Defense witness declaration, indicating that there were full time employees who "regularly worked eight hour shifts with no time scheduled for unpaid meal breaks") *and* Doc. 52-4 at ¶ 3 (stating same). Of course, this does not negate Plaintiffs' assertion that other employees were the subject of an automatic meal break deduction.

[3] There has been some confusion regarding the identities of the health care systems and/or facilities encompassed in this lawsuit. Defendants have suggested that Mercy Life Center Corporation ("Mercy Life"), not Pittsburgh Mercy Health System, Inc. ("Mercy Health"), is the actual employer of most potential collective action members. *See* Defs.' Aff. (Doc. 52-2) at ¶ 4 (sworn statements of Mercy Life's human resources director, indicating that Mercy Health employs only "2 or 3 if any" non-exempt workers). On the other hand, Defendants' same

3

All of Plaintiffs' affiants worked at Mercy Hospital. None of the affiants have demonstrated personal knowledge regarding the policies that are, or were, in effect at any other facility. Plaintiffs have offered only allegations in the Complaint, not evidence, regarding the other locations.

It is Plaintiffs' burden "to show a modest factual nexus between their situation and that of the proposed class members." *See* June 1st Order in <u>Kuznyetsov</u> at 3 (citations omitted). Although Plaintiffs ask the Court to shift their burden to the other side, requiring Defendants to identify those locations where the automatic deduction policy was not in effect, Plaintiffs' position would require an application of the "mere allegation" standard rejected by Chief Judge Ambrose in <u>Kuznyetsov</u>. *Compare* Pls.' Supp. Br. (Doc. 55) at 2 (complaining of Defendants' "refusal to identify which employees were subject" to alleged policy) *with* June 1st Order in <u>Kuznyetsov</u> at 3-4 ("mere allegation" standard is inconsistent with "the design of the FLSA's opt-in requirement to limit the size of collective actions").

This case is distinguishable from <u>Camesi</u> and <u>Kuznyetsov</u>, where the defendants admitted the existence of policies affecting all non-exempt employees at their various locations. *See* May 15th Order in <u>Camesi</u> at 1 ("Defendants have confirmed that all of UPMC's approximately 30,000 non-exempt employees have thirty minutes automatically deducted for meal breaks"); June 1st Order in <u>Kuznyetsov</u> at 6 ("Defendants implemented a system called KRONOS which automatically deduct[ed] thirty minutes of time from each non-exempt employee's pay"). A more analogous, and therefore persuasive, decision is found in <u>Colozzi v. St. Joseph's Hospital Health Center</u>, 595 F. Supp.2d 200 (N.D.N.Y. 2009).

---

witness characterizes Mercy Life as "by far the largest employer <u>within the Pittsburgh Mercy Health System</u>." *See* Doc. 32-3 at ¶ 2 (emphasis added). Of course, any technical deficiencies regarding the precise identities of the proper named Defendants can easily be rectified through amendment, and counsel's time and resources would appear better spent in other areas.

4

As is the case here, the record in Colozzi was "wholly devoid of any evidence from which [one] could conclude, even applying the modest threshold applicable at step one . . ., that hourly workers at [another facility we]re similarly situated to those at the [plaintiffs' facility]. No affidavits [we]re given from employees at the [other] facility, nor [did] the affirmations provided by the plaintiffs state that they [had] personal knowledge that health care workers [at the other facility we]re subject to [the same policies]." *Id.* at 209 (citations omitted). The Colozzi Court held that the plaintiffs had failed to sustain their burden at stage one regarding the other facility, *see id.*, and this Court reaches the same conclusion here.[4]

Having concluded that conditional certification and notice should be limited to employees at Mercy Hospital, the Court must address Defendants' requests to further restrict the notice pool. *See* Defs.' Supp. Br. (Doc. 52) at 3 (arguing, in anticipation of conditional certification regarding Mercy Hospital, that putative members should be limited to employees acting "in a direct care giving role," "in the same departments" as Plaintiffs' affiants, who worked "more than 40 hours in a week that . . . allegedly contained an improper meal deduction").

In Kuznyetsov, Chief Judge Ambrose rejected the defendants' argument that notice should be limited to employees with patient care responsibilities. *See* June 1st Order at 9. In reaching her decision, Judge Ambrose noted that the plaintiffs' affidavits did not restrict the reasons for their working through meal breaks to patient care. *See id.* at 5; *see also generally* discussion *supra* (noting that affiants in this case also identified staffing shortfalls as reason for

---

[4] Colozzi does not appear to have contemplated the possibility that discovery could reveal the extent to which the defendants' alleged policies extended beyond the plaintiffs' work location. *See id.* The undersigned offers no opinion regarding whether, or when, such a request may be appropriate in this case.

5

working through meal breaks). As suggested in Camesi, Plaintiffs' evidence is sufficient to create a reasonable inference that, for all hourly employees of Mercy Hospital subjected to the automatic meal break deduction, Defendants abandoned their duty "to ensure that non-qualifying meal breaks [were] not deducted from [employees'] pay." *See* May 15th Order at 6-7. Judge Ambrose echoed this sentiment in Kuznyetsov, and "[a]ny dissimilarities" regarding the putative collective action members "may be reevaluated in the second stage of . . . certification." *See* June 1st Order at 9.

Defendants next request that notice be limited to those employees who have worked in the same departments as Plaintiffs' affiants. This is too fine a distinction.

None of the court decisions cited by Defendants restricted notice to intra-facility departments. *See* Defs.' Supp. Br. at 9 (citing cases limiting notice to those workers employed "at [the] same facility" or "work location" as plaintiffs). Plaintiffs have submitted affirmations from employees working in multiple departments at Mercy Hospital, and this is sufficient to create a reasonable inference of similar situation. *See* discussions *supra* (Plaintiffs must make only "a modest factual [showing]" at stage one). Notice therefore will issue to all hourly employees at Mercy Hospital (employed before March 1, 2008, *see* discussion *infra*), irrespective of where in the Hospital they worked.

Defendants also ask that notice be restricted to non-exempt employees who worked more than 40 hours in a week that allegedly contained an improper meal deduction. *See* discussion *supra*. An equivalent argument was rejected in Camesi, and it is no more convincing here. *See* May 15th Order at 7-8 (demanding evidence of overtime or minimum wage violations in FLSA meal break cases would entail "delving too deeply into the merits of Plaintiffs' claims").

The same evidence found sufficient in <u>Camesi</u> has been presented here, and the Court's conclusion is no different.[5]

Finally, Defendants argue that notice to Mercy Hospital employees should be restricted to those workers who commenced employment at the Hospital before March 1, 2008.  *Cf.* Defs.' Supp. Br. at 3, 10, 23.  In this regard, Defendants are correct.

In <u>Camesi</u>, the undersigned entered an Order clarifying Mercy Hospital's obligation to identify employees subject to UPMC's compensation policies.  *See* Doc. 140 in <u>Camesi</u>. The Court required Mercy Hospital to identify those hourly employees who worked at the Hospital after March 2008, given the clear indication that UPMC's policies first went into effect at that time.  *See generally id.*  Conversely, Mercy Hospital was not required to identify those employees who worked at the Hospital before March 2008.  *See id.*

In a subsequent Order, denying Mercy Hospital's request for dismissal in <u>Camesi</u>, the Court stated:

> In [<u>Camesi</u>], Mercy Hospital is identified as one of many entities operating within the UPMC health system. . . .  Plaintiffs have pursued a collective action against Defendants, alleging that UPMC instituted uniform policies in violation of the FLSA.

---

[5] Defendants' request to limit notice to employees with demonstrable records of potential overtime violations also presents serious practical and logistical problems.  How Defendants would undertake a review of payroll records to identify those employees who, at one time or another, worked a forty-hour week during which an "improper" meal break was deducted, is beyond the Court's imagination.  Likewise, Defendants' hypothetical scenario of a "part-time" worker who, despite enduring presumably improper meal deductions, did not exceed a forty-hour work week, raises additional questions.  If, for example, an employee worked a 39-hour week, but suffered four improper 30-minute deductions, her actual hours worked would be 41, *i.e.*, one hour in excess of the FLSA 40-hour threshold.  The manner in which such an employee would be categorized, or even identified at this juncture, remains unclear.  In any event, these hypothetical scenarios only serve to emphasize the propriety of reserving the aforementioned issues until after the close of discovery.

7

> In [Taylor, *i.e.,* this case], Mercy Hospital is identified as part of the Pittsburgh Mercy Health System . . . . Although the purported FLSA violations in Taylor are similar to the ones alleged [in Camesi], Taylor addresses a different health system, with different defendants, save a single overlapping entity, Mercy Hospital. . . .
>
> The reason Mercy Hospital has been named in both lawsuits is clear: in early 2008, the Hospital switched from preexisting Mercy compensation policies to the compensation policies of UPMC. . . .
>
> As this litigation proceeds, the Court and parties will be in a better position to identify a reasoned approach for dealing with Mercy Hospital . . . .

*See* Order in Camesi (Doc. 141) at 2-4 (citations omitted).

      As should now be obvious, potential liability for employees at Mercy Hospital must flow from the policies to which those employees were subject. There has been no meaningful dispute that, effective March 1, 2008, Mercy Hospital switched over to UPMC's compensation policies. To the extent Mercy Hospital, or any other Defendant, may be liable in Camesi, that liability is restricted to the time when UPMC's policies were in effect.

      The other side of the coin applies here. In this case, no Defendant can be liable for FLSA violations occurring under UPMC's policies, and notice should be restricted to those workers who commenced employment at Mercy Hospital before March 1, 2008.

      It seems possible, if not highly likely, that certain workers were employed at Mercy Hospital both before UPMC's compensation policies went into effect and after. Under the circumstances, those employees will, and should, receive notice in both cases. As these related cases proceed, the Court and parties again will be better suited to address the aforementioned scenario, although the undersigned currently sees no reason why such employees should be excluded from either action.

The only matters that remain are: the parties' arguments relating, directly or indirectly, to Plaintiff counsel's pre- and post-litigation solicitation practices; and disputes over the proper form and content of the Court-approved notice. *See* Defs.' Supp. Br. at 11-23; Pls.' Supp. Br. at 11-24.

As for the solicitation-related issues, none of them need to be addressed to resolve the Motion now before the Court. Defendants, moreover, may not properly utilize their briefing to move for affirmative relief. *See* Patterson v. World Wrestling Entm't, Inc., 2006 WL 273527, *19 n.37 (E.D. Wis. Jan. 31, 2006) (under Federal Rule 7, "[a]n application to the court for an order shall be by motion," and "[a] brief is not a motion and will not be treated as such").

As for matters regarding notice, the parties are hereby directed to meet and confer to determine whether agreement can be reached regarding the parameters, form, and/or substance of the notice. As counsel surely are aware, rulings regarding notice have issued in both Camesi and Kuznyetsov. While all three of these lawsuits are different, the parties would seem hard-pressed to explain why certain global parameters, consistently applied by the Court, should now be abandoned in this case.

For all of these reasons, the Court **GRANTS** Plaintiffs' Motion (**Doc. 3**) for conditional certification, and notice shall issue to all non-exempt employees who, within the last three years,[6] worked at the Mercy Hospital of Pittsburgh and whose employment commenced before March 1, 2008.

---

[6] *See* May 15th Order in Camesi at 10 (establishing three-year notice period based on FLSA's statute of limitations for "willful violations") (citation omitted).

9

It is further **ORDERED** that Defendants shall supply Plaintiffs with information[7] regarding the putative collective action members, consistent with the discussions above, within 30 days of this Order; and, within 45 days, the parties shall either file a stipulated notice form for judicial approval, or they shall cross-file proposed notice forms, and memoranda of law not exceeding ten pages, in support of their competing proposals.

IT IS SO ORDERED.


July 7, 2009                                                s/Cathy Bissoon
                                                            Cathy Bissoon
                                                            United States Magistrate Judge

cc (via email):

All Counsel of Record

---

[7] Consistent with the May 15th Order in Camesi, the information will be restricted to the non-exempt employees' names and mailing addresses. Telephone numbers shall be provided for the purposes of running reverse directory checks for putative members with outdated addresses, and not to make calls to prospective class members. *See id.* at 10 (citations and emphasis in original omitted). A Protective Order is hereby entered limiting the use of home telephone numbers to an address verification device.